Irina Shpigel
SHPIGEL & ASSOCIATES, P.C.
110 Wall Street, Suite 4-054
New York, New York 10005
(212) 390-1913

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ILYA MELNICHENKO, OLGA MILINTENKOVA, and EVEGENY TARASOV<br><br>Plaintiff(s),<br><br>    - against-<br><br>MR. MART USA, LLC, PALMETTO GAS COMPANY, LLC., PALMETTO 511, LLC., FOREST HILLS GAS COMPANY #502, LLC., FRANK GUTTA, ALI JAFERI, and ABBAS M. JAFERI<br><br>Defendant(s). | Civil Action No.<br><br><br>**COMPLAINT<br>AND<br>DEMAND FOR JURY TRIAL** |

Plaintiffs, ILYA MELNICHENKO (hereinafter referred to as "Ilya"), OLGA MILINTENKOVA (hereinafter referred to as "Olga"), and EVEGENY TARASON (hereinafter referred to as "Evegeny") (collectively referred to as "Plaintiffs"), by and through undersigned counsel, alleges upon information and belief the following against Defendants, MR. MART USA, LLC (hereinafter referred to as "Mr. Mart"), PALMETTO GAS COMPANY, LLC., (hereinafter referred to as "PGC"), PALMETTO 511, LLC., (hereinafter referred to as the "Palmetto Project"), FORESTS HILLS GAS COMPANY #502, LLC., (hereinafter referred to as the " Forest Hills Project"), FRANK GUTTA (hereinafter referred to as "Gutta"), ALI M.

JAFERI  (hereinafter referred to as "Ali") and ABBAS M. JAFERI (hereinafter referred to as "Abbas").

## NATURE OF THE ACTION

1. Plaintiffs are the victims of an orchestrated fraud, in which Defendants preyed on foreign nationals desirous of leaving foreign countries, such as Russia and Kazakhstan, to provide their families with the opportunity for a better life in the United States through the EB-5 program.

2. In May 2013, Defendants Frank Gutta, and Alli Jaferi solicited Plaintiffs to each invest $500,000, plus a $45,000 "administrative fee," through the EB-5 immigrant investor program, into purported real estate projects in Florida, known as the "Forest Hills Gas Company #502, LLC" and "Palmetto 511, LLC".

3. Pursuant to the agreement between the parties, Plaintiffs funds were to be returned in full in the event that their I-526 petitions were denied.

4. In a typical EB-5 project, investor funds are raised and used to complete a specific project described in the project's private placement memorandum or offering documents. Once the individual has invested, he or she may apply for a conditional green card, which is valid for two years. If the investment creates or preserves at least ten jobs during those two years, the investor may apply to have the condition removed from his or her green card, and the investor may then live and work in the U.S. permanently.

5. Frank Gutta and Ali Jaferi were involved in funding, through the EB-5 program multiple projects, including the Palmetto Project and the Forest Hills Project, which involved the expansions of existing gas stations and convenience stores in Florida.

6. Defendants made multiple representations in the offering documents regarding Mr. Mart

and the Projects. Investors in the EB-5 Projects were told they were investing in project specific expansions of existing gas stations. While some of the funds were used for those projects, the majority of the funds were commingled, misused and diverted to pay for unauthorized projects and personal luxuries.

7. Subsequently Plaintiff's I-526 petitions were denied.

8. As a result of said denials, Plaintiffs relied on the return of their investment capital and demanded refunds beginning in December of 2015. From December of 2015 up to and including June 2016 Defendants provided assurances to Plaintiffs that refunds would be issued. Refunds were never issued.

9. Instead, after receiving Defendants' demand for a refund, Defendants shut down the operations of the Forest Hills Project and the Palmetto Project and declared Bankruptcy.

10. Defendants failed to notify Plaintiffs that they have declared Bankruptcy, instead lulling them into a false sense of security by stating that additional appeals of the I-526 application process were in place, that the country's foremost immigration attorney had been hired to prosecute the appeals, and that all was well with the Project, thereby further lulling Plaintiffs and falsely allowing Defendants to deny any rights to reimbursement. In truth, of course, the money was gone, Defendants filed for bankruptcy, no jobs were created, the federal government had closed the appeals, the I-526 immigrant petitions were never issued, and the list of lies is virtually endless.

11. The representations made to induce Plaintiffs' investments into the Project were mostly lies, calculated to induce investments by needy, trusting, unsuspecting foreigners with $500,000 seeking the opportunity to pursue a life with more opportunities than those afforded to them in Russia and Kazakhstan.

12. The 100% guaranty that the investment would be returned in the event of the denial of the petition was not worth the paper it was printed on. Plaintiffs' I-526 petitions were all denied, yet their funds were never returned.

13. Defendants made representations to Plaintiffs all along that the Projects were viable and that they "should have been approved."  Plaintiffs advised Defendants that they would agree to have their money in the Project and that an updated application with the USCIS should be filed if in fact the Project met EB-5 requirements.  Plaintiffs subsequently learned that the Project does not meet nor did it ever meet EB-5 requirements, and therefore a refiling of an updated application would have been fruitless.  Defendants knew, or should have known that the Project did not ever meet EB-5 requirements.

14. Accordingly, Plaintiffs are now unable to leave Russia and have lost virtually their entire lifesavings.

15. Plaintiffs come to this Court, with clean hands, seeking assistance in their pursuit for redress, justice, and the cessation of Defendants' continued use of their stolen funds

## THE PARTIES

### A.  *Plaintiffs*

16. Plaintiff ILYA MELNICHENKO ("Ilya") is a Kazakh citizen who invested over $500,000 in one of the EB-5 Projects (Forest Hills Gas Company #502, LLC., discussed *infra*), and has been damaged by Defendants' conduct alleged herein.

17. Plaintiff OLGA MILITENKOVA ("Olga") is a Russian citizen who invested over $500,000 in one of the EB-5 Projects (Palmetto 511, LLC., discussed *infra*), and has been damaged by Defendants' conduct alleged herein.

4

18. Plaintiff EVEGENY TARASOV ("Evegeny") is a Russian citizen who invested over $500,000 in one of the EB-5 Projects (Palmetto 511, LLC., discussed *infra*), and has been damaged by Defendants' conduct alleged herein.

**B. Defendants**

19. Defendant Mr. Mart USA, LLC is a Florida limited liability organization, with its principal place of business at 7280 West Palmetto Park Road, Suite 203, Boca Raton, Florida.  Frank Gutta is the Chief Executive Officer of Mr. Mart, which owns 100% of Palmetto Gas Company, LLC. Palmetto Gas Company LLC., owns 100% of Palmetto 511, LLC, and Forest Hills Gas Company #502, LLC.

20. Defendant Forest Hills Gas Company #502, LLC is a Florida limited liability organization, with its principal place of business located at 7280 West Palmetto Park Road, Suite 203, Boca Raton, Florida. Forest Hills Gas Company #502, LLC is wholly owned by Palmetto 511, LLC.

21. Defendant Palmetto 511, LLC is a Florida limited liability organization, with its principal place of business located at 7280 West Palmetto Park Road, Suite 203, Boca Raton, Florida. Palmetto 511, LLC., is wholly owned by Palmetto Gas Company, LLC.

22. Defendant Palmetto Gas Company, LLC., is a Florida limited liability organization, with its principal place of business located at 7280 West Palmetto Park Road, Suite 203, Boca Raton, Florida. Palmetto Gas Company, LLC., wholly owned and managed each of the EB-5 Projects at issue in this litigation.

23. Defendant Frank Gutta is an individual who resides in Broward County, Florida at 100 Nighthawk Avenue, Plantation, Florida 33324. Gutta is the owner, officer and director of the holding company that controls the Projects, Mr. Mart, USA. Gutta effectively

controlled each of the EB-5 Projects at issue in this litigation.

24. Defendant Abbas M. Jaferi is an individual who, upon information and belief, resides in Palm Beach County, at 17828 Scarsdale Way, Boca Raton, Florida 33496. At all times material, Abbas acted as a member and/or manager of the Projects. Abbas Jaferi is an officer, director and Managing Member of the Projects. Abbas effectively controlled each of the EB-5 Projects at issue in this litigation.

25. Defendant Ali M. Jaferi is an individual who, upon information and belief, resides in Palm Beach County, at 17828 Scarsdale Way, Boca Raton, Florida 33496. At all times material, Ali acted as a member and/or manager of the Projects. Ali is the Chief Operating Officer of Mr. Mart, and the Projects. Ali effectively controlled each of the EB-5 Projects at issue in this litigation.

**JURISDICTION AND VENUE**

26. This Court has personal jurisdiction over Defendants because a substantial portion of Defendants' acts giving rise to the claims alleged herein were performed in this district. Specifically each Defendant transacted business in New York, including the solicitation of the EB-5 Investments, negotiations of the Contracts involved herein and some of the acts that give rise to Plaintiff's claims.

27. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1332.

28. Venue is proper in this forum pursuant to 28 U.S.C. §1391 because a substantial part of the acts, transactions, and events giving rise to the claims occurred, in New York, New York.

## SUBSTANTIVE ALLEGATIONS

EB-5 Visa Program in General

29. The Immigrant Investor Program, more commonly known as the EB-5 program, was created by the Immigration Act of 1990. Congress established the EB-5 program to stimulate the U.S. economy by giving immigrant investors the opportunity to permanently live and work in the United States after they have invested in a new commercial enterprise (''NCE'').

30. In the case of an NCE that is located in a Targeted Employment Area ("TEA"), i.e., either a rural area or an area beset by high unemployment, the required equity investment need only be $500,000.

31. In 1993, Congress created the Immigrant Investor Pilot Program to increase interest in the EB-5 visa program. This new pilot program established EB-5 Regional Centers ("Regional Centers"), which are entities that receive special designation from the United States Citizenship and Immigration Services ("USCIS") to administer EB-5 investments and create jobs. Public and private entities may apply to the USCIS for approval as an EB-5 Regional Center.

32. EB-5 visa programs administered by a Regional Center provide more flexibility, because the immigrant investor who invests in such a program is permitted to take credit not only for direct jobs created in the NCE but also "indirect jobs" created outside the NCE in a job creating enterprise ("JCE"), such as a construction contracting firm that builds an improvement for the NCE. In addition, the immigrant investor need not handle the day-to-day management of the NCE or even necessarily live in the region where the NCE is

located.

33. By necessity, investments into an EB-5 program are "closed-ended," available only to a specified number of investors, and that number is tied to the number of direct or indirect jobs created by the investment. If too few jobs are created with the money invested, the immigrant will not be able to become a permanent resident in the United States.

EB-5 Practice and Procedure

34. Under the EB-5 program, the immigrant investor first applies for an immigrant visa by submitting a Form I-526, Immigrant Petition for Alien Entrepreneur. USCIS' approval of the Form I-526 is conditioned upon the immigrant's investment of the requisite amount of money in an NCE that satisfies the applicable legal requirements.

35. The Immigration and Nationality Act ("INA"), specifically Section 203(b)(5)(A), provides classification to qualified immigrants seeking to enter the United States for the purpose of engaging in a new commercial enterprise ("NCE"):

> (i)   in which such alien has invested (after the date of enactment of the Immigration Act of 1990) or, is actively in the process of investing, capital in an amount not less than the amount specified in subparagraph (C)1, and

> (ii)  which will benefit the United States economy and create full-time employment for not fewer than 10 United States citizens or aliens lawfully admitted for permanent residence or other immigrants lawfully authorized to be employed in the United States (other than the immigrant and the immigrant's spouse, sons or daughters).

36. Upon approval of the Form I- 526 petition, the immigrant investor may either: (1) file the appropriate form to adjust their status to a conditional permanent resident within the

United States; or (2) file an application to obtain an EB-5 visa for admission to the United States.

37. Upon the approval of the application or upon entry into the United States with an EB-5 immigrant visa, the EB-5 investor and derivative family members will be granted conditional permanent residence for a two-year period.

38. To remove the conditional resident status, the immigrant investor must file a Form I-829, Petition by Entrepreneur to Remove Conditions, ninety days before the two-year anniversary of the granting of the EB-5 investor's conditional resident status. USCIS' approval of the Form I-829 is conditioned upon proof that the immigrant investor's investment has created at least ten full-time jobs in the NCE or JCE. If an insufficient number of jobs was created, the foreign national is subject to removal from the United States.

EB-5 Program at it pertains to the Projects

39. Beginning in or around May of 2013, Mr. Mart through its Attorney Mona Shah, Esq., whose office is located in New York, New York, solicited Plaintiffs regarding the EB-5 program through investments in the Projects.

40. Mr. Mart and the Projects at the heart of this litigation were at all times operated and controlled by Gutta, Ali and Abbas.

41. Mr. Mart held itself out as an EB-5 Direct Investment Approved Project, and claimed to specialize in investment-based immigration services.

42. As part of the management's solicitations, Plaintiffs were provided with four (4) documents:

(a) Business Plan (the "Plan").

9

(b) Subscription Agreement (the "Agreement").

(c) Investment Memorandum (the "Memorandum").

(d) Escrow Agreement (the "Escrow Agreement").

Collectively, the Plan, the Agreement, the Memorandum, and the Escrow Agreement will be referred to as the "Offering Documents."

43. The representations in the Offering Documents were originally made by Gutta, Ali and Abbas on behalf of their companies, Mr. Mart, PGC and the Projects.

44. Defendants represented to Plaintiffs that Mr. Mart is an existing entity and "owns a group of Chevron Gas stations located in South Florida".

45. The Forest Hills Project and the Palmetto Project are wholly owned by PGC, an existing Florida limited liability company and PGC is wholly owned by Mr. Mart. PGC will serve as the Manager for the Forest Hills Project and the Palmetto Project.

46. Each unit in the Project required a minimum investment of $500,000, plus an administrative fee of $45,000.

47. If an investor's I-526 application was denied by USCIS, the investor was promised that they would receive their money back upon receipt of the official denial notice.

48. Armed with the Offering Documents, the USCIS Approval, presentations, and whatever oral representations they deemed necessary for a sale, Defendants sold the fraud that is the Project.

49. Defendants knowingly preyed on the trust reposed in them by Plaintiffs to drive Plaintiffs into the Project.

Plaintiffs are Fraudulently Induced to Invest in the EB-5 Offering

50. In reliance on the Offering Documents, the USCIS Approval, and the oral representations

10

described above, each of the Plaintiffs provided $500,000 for a subscription in the Project, along with an administrative fee of $45,000.

51. Each of the Plaintiffs received confirmation that their $500,000 investment and $45,000 administrative fee had been received.

52. In providing their money, Plaintiffs relied on representations that Mr. Mart and Palmetto Gas Company were established businesses, with many years of experience in operating gas stations, and that Mr. Mart specialize in investment-based immigration services.

53. In providing their money, Plaintiffs relied upon the representation that there was a 100% guaranty for the return of their investment and fees in the event their I-526 petition was denied.

54. In providing their money, Plaintiffs relied upon the representation that if their I- 526 petition was denied, their funds would be immediately returned.

55. In providing their money, Plaintiffs relied upon the representation that their funds would be exclusively invested in the Project to create jobs by helping to expand the retail operations at the Projects.

56. In providing their money, Plaintiffs relied upon the representation that their funds would be used exclusively to develop the Project and create at least ten (10) full-time jobs.

57. In providing their money, Plaintiffs relied upon the representation that their visa would be approved in less than 6 months, because Mona Shah indicated that based on her "connections" on comities she knows that the Plaintiffs would receive priority over other Applicants, due to it being "Shovel Ready" Project.

Plaintiffs' I-526 Applications are Denied by USCIS

58. Per Information provided by Mona Shah, Esq., Plaintiffs were approved as accredited

investors and subsequently their petitions were accepted by the USCIS.

59. Plaintiffs diligently submitted all necessary paperwork in conjunction with their Form I-526 Petitions, asserting eligibility based on an investment in a Regional Center.

60. Plaintiffs' Form I-526 Petitions were denied by USCIS.

61. Plaintiffs' Form I-526 Petitions were denied by USCIS for failure to establish by a preponderance of the evidence that the Form I-526 Petitions complied with the applicable legal requirements.

62. USCIS cited the following specific deficiencies: (1) insufficient number of full-time positions created by the project; and (2) multiple deficiencies in the business plan that detracted from the Project's credibility.

63. The deficiencies cited by USCIS were based on actions taken and documents provided by Defendants, and over which Plaintiffs had no control.

64. Upon receipt of said denials, Plaintiffs demanded the return of their funds.

65. In response to Plaintiffs' demands, no funds were returned to Plaintiffs.

66. Instead, Defendants engaged in an ongoing fraud intended to lull Plaintiffs into not bringing legal action, reporting the activities to law enforcement, or otherwise seeking to protect their interests.

67. Defendants repeatedly advised Plaintiffs and their counsel that they did not have the funds available to make the refunds, but would have the necessary funds upon the closing of two properties in south Florida.

68. Defendants lulled the Plaintiffs by misrepresenting that Defendants Gutta, Abbas and Ali did not do anything inappropriate with Plaintiffs' money, which had been raised truthfully and under the laws of the SEC and EB-5, and it was deployed under those laws.

12

69. Defendants lulled the Plaintiffs by misrepresenting that USCIS will approve the I-526 petitions.

70. Plaintiffs hired legal counsel to investigate the Project and the individuals involved in the hopes of securing their refunds.  After months of being given nothing but empty promises and the runaround by Defendants, Plaintiffs remain damaged and without the refunds they are entitled to.

The Fraud is Discovered

71. Upon investigation, Plaintiffs discovered that a seemingly endless laundry list of fraudulent representations were perpetrated upon them in furtherance of obtaining and stealing their money.

72. The Project was not a legitimate EB-5 project, but rather a façade and vehicle pursuant to which a group of conspirators stole over $1,500,000 from Plaintiffs (foreign nationals) seeking EB-5 visas and a better life for their families in the United States.

73. Upon information and belief Plaintiffs funds were not used towards the Projects, instead the funds were diverted to various other companies, and otherwise pillaged for personal expenditures.

74. Virtually none of Plaintiffs' funds were used at the Project, and no jobs were created.

75. Most of the representations within the Offering Documents were knowingly false or misleading.

76. Mr. Mart did not exist as a corporate entity and was not established until September 4th, 2013, a month after Plaintiffs made commitments to invest in the subject EB-5 projects.

77. Defendants represented that the Projects are wholly owned by Palmetto Gas Company, LLC, an existing Florida limited liability company.  Palmetto Gas is owned by the Mr.

Mart Group  (Mr. Mart USA, LLC.)  and that Palmetto Gas will serve as the Manager for the Projects.

78. Mr. Mart USA was formed on September 4th, 2013

79. Palmetto Gas Company was formed on May 29, 2013

80. Palmetto 511 LLC was formed on August 19th, 2013.

81. Forest Hills was formed on September 3rd, 2013.

82. Upon information and belief the Mr. Mart and PGC were created after the Plaintiffs already invested 1.5 million dollars, despite making representations that Mr. Mart and PGC were existing entities that owned multiple gas stations and had many years of experience in the industry.

83. The representations that there was a 100% guaranty for the return of Plaintiffs' investment and fees in the event their I-526 petition was denied were knowingly false.

84. The representations that Plaintiffs would receive their money back upon an official denial of their I-526 applications by USCIS were knowingly false.

85. The representations that the funds would be exclusively invested in the Project to create jobs by helping to expand and develop the Projects were knowingly false. Virtually none of the funds were used at the Project.

86. The representations that the funds would create at least 10 full-time jobs for each $500,000 advanced were knowingly false.

87. In sum, the Project was a systemic fraud, based on myriad, intentional, material misrepresentations intended to dupe unsuspecting, needy foreign investors.

88. The Project was a necessary façade, used to enable to the fraudulent scheme that bilked Plaintiffs, as foreign investors, with the promise of EB-5 visas and security for their

investments.

Where Things Stand Now

89. Defendants, and entities they own and/or control, continue to use and enjoy Plaintiffs' stolen funds.

90. No Plaintiff has received an EB-5 visa, or an I-526 petition approval.

91. Many of the Defendants continue in their fraudulent conduct, seeking additional victims for their EB-5 schemes.

92. Plaintiffs, now unable to enter the United States, are in need of a helping hand.

93. Most investors are of average means and had to spend their entire lifesavings to afford this investment.

94. Plaintiffs ask the Court for all necessary and appropriate relief, in law and equity, so that they may attempt to recover their stolen funds and begin rebuilding their lives

**COUNT I**
**CONVERSION**

95. Plaintiffs reassert and incorporate by reference the allegations in Paragraphs 1 through 94 above.

96. Defenants' Abbas, Ali and Gutta caused the transfer of Plaintiffs' funds into accounts other then Palmetto 511 and Forest Hills accounts, including other business accounts and personal accounts.

97.  Defendants' Abbas, Ali and Gutta had an obligation to return Plaintiff's funds, as a result of the denial of Plaintiff's immigration petitions.

98. By virtue of the improper taking and retention of property and payments which belong to Plaintiffs, Defendants have, without authorization, asserted dominion and control over the funds which are the specifically identifiable property of Plaintiffs and are or were the

property of Plaintiffs and which were owned or payable to Plaintiffs.

99. Defendants' conversion is inconsistent with Plaintiffs' rights and ownership to said property.

100.     The payments and property wrongfully converted by Defendants are specific and identifiable.

101.     By virtue of Defendants' repeated and continued misappropriation and conversion of Plaintiffs' property, they have caused Plaintiffs substantial damage.

102.     By virtue of Defendants' repeated and continued failure to refund the investment capital (Plaintiffs' property), they have caused Plaintiffs substantial damage.

103.     Plaintiffs have made a demand for the return of their property, but the funds have not been returned. Moreover, a demand for the return of Plaintiffs' funds would be futile. Defendants have been confronted with the fact that they stole and converted Plaintiffs' property, but have failed to return all of the property to Plaintiffs.

104.     As a result of this conversion, Plaintiffs have suffered damages.

## COUNT II
## BREACH OF CONTRACT

105.     Plaintiffs reassert and incorporate by reference the allegations in Paragraph 1 through 107 above.

106.     As alleged above, Gutta and Ali signed the Offering Documents and directed and/or controlled the Palmetto Project and the Forest Hills Project.

107.     Pursuant to the Offering Documents, the Defendants' were under an obligation to return Plaintiff's funds in the event their immigration Petition was denied.

108.     Additionally, Defendants' were under an obligation to use Plaintiffs' funds pursuant to the Offering Documents.

109.     Gutta and Ali, violated the agreement by holding and using Plaintiffs' funds.

110.     Gutta and Ali, violated the agreement by failing to refund Plaintiffs' funds after their immigration petitions were denied.

111.     As a result of the breaches of the Parties agreements, Plaintiffs suffered damages.

## COUNT III
## FRAUD IN THE INDUCEMENT

112.     Plaintiffs reassert and incorporate by reference the allegations in Paragraphs 1 through 111 above.

113.     As specifically described above, Defendants made knowingly false statements concerning material facts in the Offering Documents.

114.     Defendants adopted and sold the representations in the Offering Documents when selling the Project to Plaintiffs.

115.     Defendants knew that their representations were false, and intended that the Plaintiffs rely upon the representations and be induced by them to invest their money into the Project.

116.     Plaintiffs relied upon these representations and have been damaged.

## COUNT IV
## UNJUST ENRICHMENT

117.     Plaintiffs reassert and incorporate by reference the allegations in Paragraphs 1 through 116 above.

118.     As alleged above, Ali, Abbas and Gutta accepted an investment of at least $500,000 from each investor in Mr. Mart for investor's participation in the Projects. Ali, Abbas and Gutta caused in turn the Projects to transfer money into accounts under Ali,

17

Abbas, and/or Gutta's own control. These transfers were not authorized in accordance with the Offering Documents. Accordingly, it would be inequitable for Defendants to retain the benefits obtained by them as a result of their unlawful actions.

119.     As a result of Defendants' unlawful actions, Plaintiffs have conferred a benefit on Defendants in the form of assets taken from Plaintiffs and given to Defendants or by Defendants' acquisition of assets or real property acquired using funds unlawfully obtained from Plaintiffs.

120.     Defendants were aware of the benefits conferred on them by Plaintiffs, and have been unjustly enriched by the benefits.

121.     Defendants voluntarily accepted and retained the benefits conferred on them.

122.     For these reasons, Defendants have been unjustly enriched.

## COUNT V
## BREACH OF FIDUCIARY DUTY

123.     Plaintiffs reassert and incorporate by reference the allegations in Paragraph 1 through 122 above.

124.     Abbas, Ali and Gutta owed a fiduciary duties of care and loyalty to each investor of the Projects, by virtue of their roles as principals and/or their control over the respective Mr. Mart Projects.

125.     The duty of care owed by Abbas, Ali and Gutta to the investors was to refrain from engaging in grossly reckless conduct, intentional misconduct and knowing violations of the law.

126.     The duty of loyalty owed by Abbas, Ali and Gutta to the investors included at a minimum the duties: 1) to account to the Projects and the investors and hold as trustee for

them any property, profit, or benefit derived.

127.     By comingling funds, causing funds to be improperly transferred, diverting funds to personal use, failing to use the funds as permitted in the Offering Documents, failing to pay rent on property leased to the Palmetto 511 Project, subleasing the property leased by Palmetto 511 to Djourhi Investments, LLC., without notifying Plaintiffs, causing Palmetto 511 to file for bankruptcy, and failing to notify the Plaintiffs, Ali, Abbas and Gutta breached their fiduciary duties of care and loyalty to Plaintiffs.

128.     The acts of Ali, Abbas and Gutta were not in good faith and were not within the scope of their authority.

129.     As a result of these breaches of fiduciary duty, Plaintiffs suffered damages.

**COUNT VI**
**CIVIL CONSPIRACY**

130.     Plaintiffs reassert and incorporate by reference the allegations in Paragraphs 1 through 129 above.

131.     Defendants are parties to a conspiracy.

132.     There was an agreement between the Defendants to do an unlawful act or to do a lawful act by unlawful means, there were overt acts in furtherance of the conspiracy, and Plaintiffs were damaged as a result of acts done under the conspiracy.

133.     As described above, the basis of the conspiracy is a fraud and theft of approximately $1,500,000 of Plaintiffs' money, which are independent torts that give rise to causes of action if committed by one person.

134.     Defendants entered into a conspiracy and acted in concert to market a fraudulent investment scheme to Plaintiffs, steal their money, and then upon information and belief

distribute and dissipate the money among themselves.

135.     Defendants acted with the full knowledge and awareness that the investment scheme was designed to fraudulently procure and steal Plaintiffs' funds under the guise of an EB-5 visa investment opportunity.

136.     Defendants acted contrary to law, acted according to a predetermined and commonly understood plan of action for the purpose of obtaining Plaintiffs' funds, and took overt acts in furtherance of the conspiracy.

137.     There was a meeting of minds between and among the Defendants to commit the unlawful acts alleged herein.

138.     Plaintiffs have suffered damage as a result of the conspiracy.

## COUNT VII
## CONSTRUCTIVE FRAUD

139.     Plaintiffs reassert and incorporate by reference the allegations in Paragraphs 1 through 138 above.

140.     A duty to Plaintiffs under a confidential or fiduciary relationship has been abused.

141.     An unconscionable or improper advantage has been taken of Plaintiffs.

142.     As specifically described above, a fraudulent scheme was perpetrated upon Plaintiffs, based upon knowingly false statements concerning material facts and concealment.

143.     Plaintiffs relied upon the knowingly false statements concerning material facts and concealment, were induced to provide their investments, and have been damaged.

144.     The fraudulent scheme perpetrated upon Plaintiffs was wrongful, and equitable interference is justified under these circumstances.

## COUNT VIII
## VIOLATION OF NEW YORK GENERAL BUSINESS LAW §349

145.     Plaintiffs reassert and incorporate by reference the allegations in Paragraphs 1 through 144 above.

146.     Defendants entered into a conspiracy and acted in concert to market a fraudulent investment scheme to Plaintiffs, steal their money, and then upon information and belief distribute and dissipate the money among themselves.

147.     Defendants acted with the full knowledge and awareness that the investment scheme was designed to fraudulently procure and steal Plaintiffs' funds under the guise of an EB-5 visa investment opportunity.

148.     Specifically, Mart targets investors and potential consumers from all over the world to take advantage of their "EB-5 visa investment opportunity."  Upon information and belief, Mart's opportunity is designed to lure unsuspecting foreign nationals into investing their well-earned capital into an opportunity which confers no benefit to consumers, only benefitting Mart.

149.     Defendants' actions here have the detrimental effect of lowering foreign nationals' confidence in investing in American business opportunities.

150.     Defendants' actions were deceptive from the beginning.

151.     Defendants' actions were calculated to the detriment of Plaintiffs and other similarly-situated consumers.

152.     Defendants are liable under §349 for material omissions and misrepresentations because they treated Plaintiffs as any customer entering into an investment opportunity, furnishing them with standard documents presented to customers upon the agreement to invest.

21

153.     As a direct and proximate result of Defendants' actions, Plaintiffs have been damaged.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for judgment as follows:

(a) An award to Plaintiffs of compensatory, exemplary, punitive and statutory penalties and damages, including interest, in an amount to be proven at trial;

(b) An award of attorneys' fees and costs, as allowed by law;

(c) An award of pre-judgment and post-judgment interest, as provided by law;

(d) Leave to amend this Complaint to conform to the evidence produced at trial; and

(e) Such other relief as may be appropriate under the circumstances.

## **DEMAND FOR JURY TRIAL**

Plaintiffs demand a trial by jury on all issues so triable.

Dated: New York, New York
      May 26th, 2017

Respectfully Submitted,


SHPIGEL & ASSOCIATES, PC


By:     /s/ Irina Shpigel
      Irina Shpigel
      110 Wall Street
      New York, New York
      T: (212) 390-1913
      F: (646) 355-0242
      E: ishpigel@iselaw.com