IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CASE NO.: 1:17-CV-04021-NRB

_____/
ILYA MELNICHENKO, OLGA MILINTENKOVA, and
EVGENY TARASOV,

      Plaintiffs,

vs.

MR. MART, USA, LLC, PALMETTO GAS COMPANY, LLC,
PALMETTO 511, LLC, FOREST HILLS GAS COMPANY #502,
LLC, FRANK GUTTA, ALI JAFERI, and ABBAS M JAFERI,

      Defendants.
_____/

MR. MART USA, LLC, a Florida limited liability company,
PALMETTO GAS COMPANY, LLC, a Florida limited liability company,
PALMETTO 511, LLC, a Florida limited liability company,
FOREST HILLS GAS COMPANY #502, LLC, a Florida limited liability company, and
FRANK GUTTA, an individual,

      Third Party Plaintiffs,

vs.

MONA SHAH, ESQ., an individual,
MONA SHAH, P.C., a New York professional corporation,
VLADISLAV SIROTA, an individual,
SIROTA & ASSOCIATES, P.C., a New York professional corporation,
NADIM AHMED, an individual, EDWIN SHAW, LLC a New York Limited
Liability Company, and DANIEL D. ESTRIN, ESQ., an individual

      Third Party Defendants.
_____/

## VERIFIED THIRD-PARTY COMPLAINT

      MR. MART USA, LLC, a Florida limited liability company ("MR. MART"), PALMETTO

GAS COMPANY, LLC, a Florida limited liability company ("PG"), PALMETTO 511, LLC, a

Florida limited liability company ("PALMETTO 511") FOREST HILLS GAS COMPANY #502, LLC, a Florida limited liability company ("FH"), and FRANK GUTTA, an individual ("GUTTA") (and where appropriate, collectively referred to as "Third Party Plaintiffs") file this Verified Amended Complaint against Third Party Defendants MONA SHAH, ESQ., an individual ("SHAH"), MONA SHAH, P.C., a New York professional corporation ("SHAH LAW FIRM"), VLADISLAV SIROTA, an individual ("SIROTA"), SIROTA & ASSOCIATES, P.C., a New York professional corporation ("SIROTA LAW FIRM")( collectively, "SIROTAS"), NADIM AHMED, an individual ("AHMED"), and EDWIN SHAW, LLC, a New York Limited Liability Company, ("EDWIN SHAW"), DANIEL D. ESTRIN, ESQ., an individual ("ESTRIN"), and where appropriate, collectively referred to as "Third Party Defendants") and state:

## SUMMARY OF THIRD-PARTY COMPLAINT

> Plaintiffs are the victims of an orchestrated fraud, in which Defendants preyed on foreign nationals desirous of leaving foreign countries, such as Russia and Kazakhstan, to provide their families with the opportunity for a better life in the United States through the EB-5 program.

*See* [DE-30] at pg. 2, ¶1. So begins the Plaintiffs' First Amended Complaint. **But Plaintiffs are not the only victims**: the Third Party Plaintiffs were also misled by the Third Party Defendants into believing: (1) that they (Third Party Defendants) possessed the professional (legal) ability to properly perform the complex legal work required under United States immigration law to prepare and file I-526 petitions, and to comply with the requirements of the EB-5 program; and (2) that said Defendants had a *bona fide* intent to perform these services for Plaintiffs. In fact, from the outset, it was the intention of said Defendants to perpetrate a fraud against Plaintiffs, steal their money, and set up the Third-Party Plaintiffs, to be sued by Plaintiffs, as the proverbial "fall guys". None of the

Third-Party Defendants were sued by Plaintiffs in the original lawsuit. Upon information and belief, **PLAINTIFFS**' counsel herein, (and now a Third-Party Defendant) attorney **Daniel D. Estrin, Esq.**, during all times relevant hereto, was/is also "**of counsel**" to Mona Shah, while also holding himself to be a **PARTNER** of Defendant Sirota, worked for said attorneys and was directly involved with the subject EB-5's. ESTRIN is protecting the Third-Party Defendants to the detriment of the PLAINTIFF and the Third-Party Plaintiffs. It is clear that, at a minimum, SHAH and the SHAH law firm, whose unlawful actions are already set forth with particularity in the Amended Complaint, **should have been sued as well**. Diligent investigation by the Third-Party Plaintiffs revealed that the scheme to defraud was in fact a **full-blown conspiracy** organized by the Third-Party Defendants and used to defraud Plaintiffs, and Third-Party Plaintiffs. As a result of the unlawful acts committed by the Third-Party Defendants, the Third-Party Plaintiffs now face allegations of wrongdoing, including fraud and conversion, and face the possibility of being held jointly and severally liable for the damages suffered by the Plaintiffs, an amount in excess of **One and One-Half Million Dollars ($1,500,000.00)**. Accordingly, the Third-Party Plaintiffs hereby sue the Third Party Defendants for fraud, breach of fiduciary duty, and civil conspiracy.

## PARTIES, JURISDICTION, AND VENUE

*The Parties Plaintiff*

1. MR. MART USA, LLC is a limited liability company, organized and maintained under the laws of the State of Florida, and which maintains its principal place of business in Boca Raton, Florida.

2. PALMETTO GAS COMPANY, LLC is a limited liability company, organized and maintained under the laws of the State of Florida, and which maintains its principal place of

business in Boca Raton, Florida.

3. PALMETTO 511, LLC is a limited liability company, organized and maintained under the laws of the State of Florida, and which maintains its principal place of business in Boca Raton, Florida.

4. FOREST HILLS GAS COMPANY #502, LLC is a limited liability company, organized and maintained under the laws of the State of Florida, and which maintains its principal place of business in Boca Raton, Florida.

5. FRANK GUTTA is a individual who resides in Plantation, Florida and is otherwise *sui juris*. At all times relevant hereto, he was a managing member of all four of the above-described limited liability companies.

***The Parties Defendant***

6. MONA SHAH is an individual, licensed to practice law, who is a resident of the State of New York and is otherwise *sui juris*.

7. MONA SHAH, P.C. is a professional corporation, a law firm, organized and maintained under the laws of the State of New York.

8. VLADISLAV SIROTA is an individual who is a resident of the State of New York and is otherwise *sui juris*.

9. SIROTA & ASSOCIATES, P.C. is a professional corporation, a law firm, organized and maintained under the laws of the State of New York.

10. NADIM AHMED is an individual who, upon information and belief, is a resident of the State of New York and is otherwise *sui juris*.

11. EDWIN SHAW, LLC is an limited liability company, organized and maintained

under the laws of the State of New York.

12. DANIEL D. ESTRIN, ESQ., is an individual who, upon information and belief, is a licensed attorney in New York and is a resident of the State of New York and is otherwise *sui juris*.

***Jurisdiction and Venue***

13. This Court has personal jurisdiction over each of the Third-Party Defendants because a substantial number of acts committed by them, which form the factual basis for the claims alleged herein, occurred in the Southern District of New York (hereinafter, "SDNY"). Specifically, the three defendant attorneys, SHAH, SIROTA, and ESTRIN, and their respective law firms, transacted business in SDNY during all relevant times; the solicitation of the EB-5 investments and procurement of the Plaintiffs, and negotiations related thereto, occurred in SDNY; the documents that were an essential part of the fraud, including without limitation the escrow agreements, were prepared by the lawyers in SDNY; the monies/fees paid by Plaintiffs were received by the Third-Party lawyers in SDNY; said monies/fees were held in escrow by the Third Party Defendants (lawyers) in SDNY; and those same monies (or at least a substantial portion of them) were illegally disbursed by the Third-Party Defendants to one or more bank accounts outside of SDNY, for the benefit of the lawyers and AHMED and EDWIN SHAW ("ES").

14. This Court has subject-matter jurisdiction over the claims raised in the Third Party Complaint pursuant to 28 U.S.C. §1332, as there is complete diversity between all Third-Party Plaintiffs and all Third-Party Defendants, and the amount in controversy exceeds Seventy-Five Thousand Dollars ($75,000.00).

15. Venue is also properly within SDNY, pursuant to 28 U.S.C. §1391, as a substantial part of the events giving rise to the claims occurred in SDNY.

## FACTS COMMON TO ALL COUNTS

*The EB-5 Program*

16. As previously described in the original complaint, Congress established a program popularly known as "the EB-5 Program."[1]

17. The mechanics of the EB-5 Program are simple: foreign nationals who desire to permanently live and work in the United States can obtain the necessary visa status by investing in what is known as a "new commercial enterprise" ("NCE"). If the NCE is in an area that is either rural in nature, or which has a high unemployment rate, the minimum investment required is 500,000.00 (for each applicant).

18. The first step in the EB-5 process is for the so-called "immigrant investor" to apply for an immigrant visa by completing and submitting a Form I-526 ("Immigrant Petition for Alien Entrepreneur"). The petition's approval is largely dependent on whether the applicant invests the requisite amount of money, *i.e.*, an amount of money that satisfies the legal requirements of the Program, into a "business" that otherwise qualifies under the EB-5 program.

19. Determining whether a "business" or "investment project" otherwise qualifies under the EB-5 program is strictly within the purview of the lawyers, whom represented themselves to the Third-Party Plaintiffs as "experts," having allegedly done "thousands" of EB-5's successfully.

20. If the I-526 Petition is approved, the applicant may then file for an EB-5 visa for permanent admission into the United States.

---

[1] The actual name of the program is "The Immigrant Investor Program."

***The Solicitation of the Plaintiffs by Sirotas, Shah and Her Law Firm, and AHMED (assisted by Estrin)***

21. At some point in or about 2012 to 2013, AHMED and Mona Shah solicited potential investors, specifically, foreign investors looking to emigrate to the United States, along with procurement efforts made by SHAH[2], SIROTA and ESTRIN.

22. As part of said business relationship, they would steer potential clients to attorneys, including SHAH, SIROTA and ESTRIN.

23. In or about 2013, Plaintiffs were introduced by AHMED and SHAH to SIROTA, (an immigration attorney who operates an immigration law firm, SIROTA & ASSOCIATES, collectively, "the Sirotas") and who works very closely with SHAH and ESTRIN, regarding the possibility of obtaining migration status in the United States by participation/investment in the EB-5 Program.

24. The Sirota Defendants agreed to assist Plaintiffs in obtaining the necessary visas, while Shah told them that the part of the application which required the business investment had to be done through MR. MART, and the other related entities herein.

25. In turn, MR. MART's website indicates that all business related to EB-5 investment projects needed to be handled by MR. MART's "legal team," *i.e.*, their counsel SHAH and her law firm ("the SHAH Defendants").[3]

---

[2] Upon information and belief, SHAH and AHMED are/were involved in a personal relationship during all relevant times.

[3] The "work projects" that would become an integral part of the EB-5 investment were owned and controlled by MR. MART, FH, PG, and PALMETTO 511. *See infra*.

7

26. Thus the Plaintiffs, from their very first meeting with Sirota, were told that **two** law firms, the Shah Defendants and the Sirota Defendants (ESTRIN worked for both of them), would be working for them for the EB-5 immigration matter.

27. What was not revealed at that point to the Plaintiffs, however,– **or to the Third-Party Plaintiffs at the time they began working with SHAH** – was that the Shah Defendants and the Sirota Defendants (or ESTRIN whom was working with both of them) had no intention of properly performing the legal work for which they were to be retained.

28. Instead, from the very beginning of the events that give rise to this Third-Party Complaint, it was the intent of the Shah Defendants and the Sirota Defendants to use the EB-5 program as a scheme to first obtain, and then convert, the Plaintiffs' monies, without providing the contracted-for legal services, or without any concern about the attorney-client obligations SHAH had directly with MR. MART and the other "project" entities.

29. The amount of money to be invested by each Plaintiff was substantial: a $500,000.00 Investment plus a $45,000.00 "administrative fee," (which was paid, in part to AHMED as a "commission"; he further continued to collect "quarterly fees" of $7,500, as ES, derived from Plaintiff's investment).

30. Eventually, the Plaintiffs hired the SIROTA Defendants, largely based on their reasonable reliance on several material representations, inducements, made by SIROTA:

    a. that the SHAH and SIROTA law firms were not only very experienced in this type of law, having done "thousands," of EB-5's, but also that they had the necessary business acumen to select "appropriate EB-5 investment projects";

  b. that MR. MART had pre-qualified EB-5 direct investment business projects (gas stations and convenience stores) that could serve as proper EB-5 investments, including one identified as "the Palmetto Project";

  c. that the fees paid by each Plaintiff ($545,000.00) would be held in escrow **pending approval** of their I-526 petitions; and

  d. that although SHAH believed that there was a high probability of Plaintiffs' I-526 petitions all being approved, the agreement included that the investment monies would be returned to Plaintiffs should their petitions be denied (a guarantee that SHAH would impose upon MR. MART, the project entities, and Gutta, without regard to the consequences to them).

***Plaintiffs' I-526 Petitions Are Denied, But the Shah and Sirota Defendants Do Not Return Plaintiffs' Monies***

  31. In or about late 2015, all of the I-526 Petitions were denied; documents obtained from the U.S. Citizenship and Immigration Services, "USCIS," indicated that they had serious deficiencies.

  32. When Plaintiffs contacted SHAH and demanded return of their monies, SHAH attempted to deflect blame onto MR. MART, **whom SHAH represented**, asserting that MR. MART was in possession of the escrowed funds, that MR. MART acknowledged that **it** (MR. MART) owed the money to Plaintiffs, and that MR. MART intended to return the monies as quickly as possible.

  33. However, neither MR. MART, nor any of the other Third-Party Plaintiffs, were aware of these representations being made by SHAH, as part of the scheme concocted by the Shah Defendants and the SIROTA Defendants to figuratively "throw them under the bus" in the event that

9

Plaintiffs demanded their monies back.

34.   The following are undisputed facts that are common to all counts asserted and injuries suffered by Third-Party Plaintiffs:

a)   SHAH, SIROTA and ESTRIN all hold themselves out as immigration law experts with, collectively, over thousands of "successful" EB-5's;

b)   SHAH, SIROTA and ESTRIN drafted, or had exclusive control over drafting, all of the related business plans, subscription agreements, investment memorandum, and escrow agreements (collectively, the "Offering Documents");

c)   **ALL** of Plaintiffs' monies were deposited into <u>SHAH's</u> trust account and further released **by SHAH**, and distributed accordingly by Defendants, at SHAH's direction;

d)   Third Party Plaintiffs did NOT benefit from any of the $45,000.00 "administration fee" charged by SHAH for each EB-5, or the respective quarterly "management fee" of $7,500.00 paid to EDWIN SHAW ("ES"), or any of the "legal fees" related to the EB-5's[4];

35.   Upon information and belief, none of the monies solicited from Plaintiffs has been refunded to any of them.

36.   In order to prosecute this Third-Party Complaint, the Third-Party Plaintiffs had to retain the services of ANDREW M. KASSIER, P.A. and PIANTINI & ASSOCIATES, P.A., to represent them in this action, and they are obligated to pay their attorneys a reasonable fee.

---

[4] Discovery, so far, has revealed that Edwin Shaw, "ES," collected as much as 40% of some of the distribution of Plaintiffs' money, while "WL" collected as much as 60%. Third-Party Plaintiffs hereby reserve the right to amend these pleadings to include a claim against "WL," should it discover that "WL" was a participant in the conspiracy.

# COUNT I. FRAUD
**(against the Shah Third-Party Defendants
and the Sirota Third-Party Defendants)**

37. The Third-Party Plaintiffs reallege and reaver the jurisdictional and common allegations contained in Paragraphs 1 through 36 of this Third-Party Complaint as though specifically pled herein.

38. At the time that the Shah Defendants and the Sirota Defendants presented the *de facto* business arrangement to the Third-Party Plaintiffs, they represented to them:

   a. that this was a legitimate, *bona fide* business venture (*i.e.*, that the Third Party Plaintiffs would be able to sell their gas stations and convenience stores);

   b. that the attorneys who were going to be involved, that being the Shah Defendants and the Sirota Defendants, were competent to perform all the legal work required to prepare, file and obtain approval of the I-526 petitions for Plaintiffs;

   c. that the Shah Defendants and the Sirota Defendants intended to properly perform legal services for the Plaintiffs; and

   d. that the Shah Defendants and the Sirota Defendants intended to abide by the terms of all the documents/agreements executed with the Plaintiffs, specifically, the Business Plan, the Subscription Agreement, the Investment Memorandum, and the Escrow Agreement (collectively, "the Offering Documents").

39. At the time these representations were made, the Shah Defendants and the Sirota Defendants knew them to be false.

40. These representations were material, and were designed to induce the Third-Party Plaintiffs to rely on them, to their detriment.

41. That the Third-Party Plaintiffs did, in fact, rely on these representations – or more accurately, misrepresentations – to their detriment, as they have now all been sued in federal court for, *inter alia*, fraud and conversion, and face a possibility of a judgment being entered against them, jointly and severally, in excess of One and One-Half Million Dollars ($1,500,000.00).

42. As the direct and proximate result of the acts of fraud by the Shah Defendants and the Sirota Defendants, the Third-Party Plaintiffs have suffered damages, as described herein, and will continue to suffer such damages in the future.

## COUNT II. BREACH OF FIDUCIARY DUTY
**(Corporate Defendants against the Shah Defendants)**

43. The Third-Party Plaintiffs reallege and reaver the jurisdictional and common allegations contained in Paragraphs 1 through 36 of this Third-Party Complaint as though specifically pled herein.

44. At all times relevant to the allegations in this Complaint, the Shah Defendants were acting as counsel for the Corporate Defendants (MR. MART USA, LLC, PALMETTO GAS COMPANY, LLC, PALMETTO 511, LLC, FOREST HILLS GAS COMPANY #502, LLC and MR. MART USA) ("Corporate Defendants").

45. The Shah Defendants owed a fiduciary duty of care and loyalty to the Corporate Defendants as their legal representatives, to not engage in unlawful, reckless, or grossly negligent conduct, and to refrain from intentional misconduct.

46. The Shah Defendants breached their fiduciary duty to the Corporate Defendants by

engaging in acts of fraud against both the Plaintiffs, and the Third-Party Plaintiffs, the result of which was a federal lawsuit being brought by Plaintiffs against the Corporate Defendants in which the Corporate Defendants have been accused of acts of fraud and conversion.

47. The Shah Defendants further breached their fiduciary duty to the Corporate Defendants as Shah, although possessing superior knowledge of the requisite EB-5 projects and guarantees, failed to properly structure said guarantees to the detriment of the Corporate Defendants.

48. As the direct and proximate result of the breach of fiduciary duty by the Shah Defendants, MR. MART USA has suffered damages, as described herein, and will continue to suffer such damages in the future.

### COUNT III. CIVIL CONSPIRACY
**(against all Third-Party Defendants)**

49. The Third-Party Plaintiffs reallege and reaver the jurisdictional and common allegations contained in Paragraphs 1 through 36 of this Third-Party Complaint as though specifically pled herein.

50. The Third-Party Defendants, acting in concert with each other and with a common purpose to do an unlawful act or acts, *i.e.*, to defraud the Plaintiffs and the Third-Party Plaintiffs, did in fact conspire to commit said violations of law.

51. In furtherance of the conspiracy, the Third-Party Defendants committed the following acts:

    a. The Sirota Defendants and ESTRIN assisted the Shah Defendants in breaching their fiduciary duty to MR. MART USA, LLC, by participating in the acts of fraud against both the Plaintiffs, and the Third-Party Plaintiffs,

13

the result of which was a federal lawsuit being brought by Plaintiffs against MR. MART USA in which MR. MART USA has been accused of acts of fraud and conversion;

b. All Third Party Defendants, including the Shah Defendants, the Sirota Defendants, AHMED, EDWIN SHAW, LLC, and ESTRIN participated in the unlawful diversion of the monies obtained from the Plaintiffs to themselves and to others,[5] with the common intent to "blame" the Third Party Plaintiffs for these acts of conversion and thereby escape liability themselves for refunding Plaintiffs' monies to the Plaintiffs;

c. open communication between SHAH, SIROTA and ESTRIN as to how they would distribute Plaintiffs' money, to the detriment of the Third Party Plaintiffs; and

d. ESTRIN'S attempt to protect the Shah Defendants and the Sirota Defendants from being named as parties defendant in the Plaintiff's Complaint.

52. Each act done in pursuance of the conspiracy by one or more of the Third-Party Defendants is an act for which each of the Third Party Defendants are jointly and severally liable as members of the alleged conspiracy.

53. As the direct and proximate result of the Third-Party Defendants' conspiracy,

---

[5] At this point in time, the Third Party Plaintiffs are not sure of the full scope of the conspiracy, and whether additional actors, including "WL," were involved. Therefore, the Third Party Plaintiffs reserve the right to seek leave of court to further amend this Third Party Complaint to add additional defendants as may be uncovered during the discovery process.

the Third-Party Plaintiffs suffered damages and will continue to suffer damages in the future.

## COUNT IV. INDEMNIFICATION
### (against all Third-Party Defendants)

54. The Third-Party Plaintiffs reallege and reaver the jurisdictional and common allegations contained in Paragraphs 1 through 36 of this Third-Party Complaint as though specifically pled herein.

55. Should the Complaint filed by Plaintiffs against the Third Party Plaintiffs (as Defendants therein) result in a judgment for money damages against the Third Party Plaintiffs, it would be inequitable for those damages to be borne by the Third Party Plaintiffs, as the only reason they have been named as parties defendant by the Plaintiffs is a the result of the acts of fraud, conversion, and conspiracy committed by all Third Party Defendants, and the breach of fiduciary duty committed by the Shah Defendants.

56. The Third Party Plaintiffs do not have an adequate remedy at law to prevent them from being held responsible for the payment of any damages that may be awarded to Plaintiffs.

57. Accordingly, the Third Party Defendants should be ordered by this Court to pay any and all damages awarded against any or all of the Party Plaintiffs.

## PRAYER FOR RELIEF

WHEREFORE, Third-Party Plaintiffs, seek the following relief:

    A.    The entry of judgment against each and every Third-Party Defendant and in favor of Third-Party Plaintiffs as to all counts in the Third Party Complaint;

    B.    The entry of an Order requiring Third-Party Defendants to indemnify Third-Party Plaintiffs in the event that any or all of them are ordered to pay damages to Plaintiffs pursuant to a final judgment in their favor in the main action;

    C.    An award of compensatory damages to each Third-Party Plaintiff;

    D.    An award of taxable costs and reasonable attorney's fees to the Third-Party Plaintiffs; and

    E.    Such other relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

TRIAL BY JURY is hereby demanded for all claims so triable.

## VERIFICATION

UNDER PENALTY OF PERJURY, I hereby swear or affirm that I have read the foregoing pleading, and the factual allegations therein are true and correct of my own personal knowledge.

                                                          *s/Frank Gutta*
                                                          FRANK GUTTA

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing was filed with the Clerk of Court and served using the CM-ECF system on Irina Shpigel, Esq., SHPIGEL & ASSOCIATES, PC, attorneys for Plaintiffs, 110 Wall Street, Suite 4-054, New York NY, this 14th day of October, 2018. Service on the Third Party Defendants will be made through initial service of process.

        Respectfully submitted,

        ANDREW M. KASSIER, P.A.
        4500 Lejeune Road
        Coral Gables, Florida 33146
        (305)-662-1000 tel
        (305)-661-0909 fax
        kassiera@aol.com

BY: *s/Andrew M. Kassier*
        ANDREW M. KASSIER, ESQ.
        (FBN 316547)

and

        PIANTINI & ASSOCIATES, P.A.
        7700 North Kendall Drive, Suite 607
        Miami, FL 33156
        (786)-509-7001 tel
        (786)-233-9470 fax
        piant217@aol.com

BY: *s/Albert J. Piantini, Esq.*
        ALBERT J. PIANTINI, ESQ.
        (FBN 157058)

        Attorneys for MR. MART, USA, LLC,
        PALMETTO GAS COMPANY, LLC,
        PALMETTO 511, LLC, FOREST HILLS
        GAS COMPANY #502, LLC and
        FRANK GUTTA